IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-02484-BNB-PAC

INTRAWEST/WINTER PARK OPERATIONS CORPORATION,

Plaintiff,

v.

RELIASTAR LIFE INSURANCE COMPANY,

Defendant.
_____

**ORDER**
_____

This matter is before me on the following:

(1)   Defendant's **Motion for Summary Judgment** [Doc. # 37, filed 9/29/2006]; and

(2)   **Plaintiff's Motion for Summary Judgment** [Doc. # 40, filed 10/2/2006].

There are disputed issues of material fact which preclude the entry of summary judgment. Consequently, both motions are DENIED.

I.

Plaintiff ("Intrawest") offered its employees medical insurance through an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Intrawest purchased an excess risk insurance policy from the defendant ("ReliaStar"). The relationship between Intrawest and ReliaStar is described by ReliaStar as follows:

> As an alternative to buying fully insured health care coverage for its employees, ERISA-governed employee benefit plans such as [Intrawest's] offer self-funded plans and then purchase excess risk insurance to reimburse the plan for medical charges that exceed a

>certain deductible amount. Defendant ReliaStar Life Insurance Company provided excess risk coverage to the Intrawest Plan.

*Memorandum of Law In Support of Motion for Summary Judgment of Defendant ReliaStar Life Insurance Company* [Doc. # 38, filed 9/29/2006] ("ReliaStar's Brief") at p.1.

Linda Pongonis was an employee of Intrawest and was covered by the Intrawest Plan. Her son, Albert Pongonis, became seriously ill in January 2002. The medical history prepared by doctors at the National Jewish Medical and Research Center ("National Jewish") contains the following description of the onset of Mr. Pongonis' illness:

>The patient is a 20-year-old young male recently diagnosed with Still's disease on May 8, 2002, who is here in consultation for a second opinion. Prior to December 2001, the patient reports being in good health. . . . He was doing well until Dec 2001. He was a student attending college classes when he developed a viral syndrome in approximately December 2001, marked by sore throat, headache and fatigue lasting approximately two days and relieved with Tylenol. Afterwards, he had chronic fatigue for a few weeks. Then, in January 2002, while walking out of a grocery store and carrying light-weight bags he developed severe bilateral bicep pain and weakness that progressed from his upper arms to his jaw, neck, back and down to his legs. The pain has been so intense and severe that he has had to discontinue school. Additionally, the weakness had been so severe that he has been unable to get out of bed.
>
>In April 2002 he had a few weeks of remission of his symptoms with travel to Florida. . . . However, his symptoms recurred. He has additionally been describing migratory arthralgias with joint stiffness, more recently developed true arthritis with swelling of his left knee and then more recently of his right wrist.
>
>He was diagnosed with Still's disease on May 8, 2002, by Dr. David Korman and was started on methotrexate approximately 6-8 weeks ago.
>
>\* \* \*
>
>The patient is a 20-year-old young male with an interesting constellation of symptoms including relapsing fever, rash, pruritus, sore throat myalgias, migratory arthritis and arthralgias. The

>
> etiologies that are considered include Still's disease, which is quite possible. Other etiologies include vasculitis, cryoglobulinemia, allergic urticaria disease, immunodeficiency such as common variable immunodeficiency, occult infection such as prostatitis (but this has already appeared to be treated), mixed connective tissue disease, rheumatoid arthritis, systemic lupus erythematosus, and granulomatous diseases.

*ReliaStar's Brief,* Exh. A-9 at pp.1, 3-4.

At times, Mr. Pongonis has been diagnosed as suffering from Still's disease.[1] See, e.g., id., Exh. A-9 at pp.1, 3 (noting that Mr. Pongonis "was diagnosed with Still's disease on May 8, 2002, by Dr. David Korman" and that Still's disease is "quite possible"). Elsewhere, however, Mr. Pongonis' doctors state that "[h]is primary diagnosis is immunodeficiency/immune dysregulation with Still's disease as a secondary diagnosis." Id., Exh. A-30.

Mr. Pongonis' doctors treated his condition with Intravenous Immunoglobulin ("IVIG"). IVIG is an expensive procedure. Intrawest has submitted claims to ReliaStar for Mr. Pongonis' IVIG treatments in an amount exceeding $110,000.

The Intrawest Plan was administered by a third-party claims administrator, Mountain States Administrator Company, Inc. ("MSA"). MSA initially denied coverage of the IVIG

---

[1]ReliaStar informs me as follows:

> Still's Disease is an inflammatory disorder characterized by daily, spiking high fevers, arthritis, and a rash. The term Still's Disease is often used to refer to a condition called juvenile rheumatoid arthritis. Adult Onset Still's Disease is used to describe adults with similar symptoms.

Defendant's *Memorandum of Law In Response to Plaintiff's Motion for Summary Judgment* [Doc. # 45, filed 10/25/2006], at p.1 n.1.

treatment. Subsequently, on December 27, 2002, MSA altered its decision and notified Linda Pongonis that Mr. Pongonis' IVIG treatment was eligible for benefits under the Plan.

ReliaStar has refused to pay Intrawest's claims for reimbursement with respect to the IVIG treatments. Consequently, Intrawest brought this suit claiming breach of the reinsurance contract; bad faith breach of the reinsurance contract; extreme and outrageous conduct; and deceptive trade practices under section 6-1-105, C.R.S. *Complaint and Jury Demand* [Doc. # 1-4, filed 12/8/2005]. Intrawest subsequently abandoned its claim for outrageous conduct, and that claim is no longer in the suit. *Plaintiff's Response to Defendant's Memorandum and Motion for Summary Judgment* [Doc. # 46, filed 10/25/2006] (the "Plaintiff's Response"), at p.17; *Scheduling Order* [Doc. # 9, filed 1/23/2006], at Part 2.

II.

Intrawest's first two claims turn on the issue of whether Mr. Pongonis' IVIG treatments were covered under ReliaStar's excess risk insurance policy (the "ReliaStar Excess Policy"). Coverage exists under that policy when the Intrawest Plan pays benefits "during the Contract Period to or on behalf of a Covered Individual according to the terms of the Employee Benefit Plan and subject to the Coverage Exclusions and Limitations section of this Policy." *ReliaStar's Brief*, Exh. A-3 at p.7. The dispute here is whether the IVIG treatments were subject to a coverage limitation.

A coverage limitation could arise in two ways. First, the coverage could be excluded by the Intrawest Plan, in which case payment would not be "according to the terms of the Employee benefit Plan," and ReliaStar would have no obligation to reimburse the payment. In addition, the

4

ReliaStar Excess Policy also contains coverage exclusions which relieve ReliaStar of any obligation to reimburse excluded payments.

ReliaStar argues that reimbursement of the IVIG costs is precluded under both the Intrawest Plan and the ReliaStar Excess Policy. First, ReliaStar argues that the Intrawest Plan excludes coverage of the IVIG treatment because it was "experimental" and expressly excluded from coverage. ReliaStar points to the Medical Plan Limitations and Exclusions section of the Intrawest Plan, which provides: "Your Medical Plan will not pay for charges resulting from any of the following: 8. 'Experimental' or Investigational Services." *ReliaStar's Brief*, Exh A-1 at p.19. An "experimental service" is defined by the Intrawest Plan as follows:

> 1. As to drugs and medicines, those that are not commercially available for purchase, or are not approved by the Food and Drug Administration for broad public use for the condition being treated.

Id., Exh. A-2 at p.1.

According to ReliaStar, IVIG is not approved by the Food and Drug Administration ("FDA") for treating Still's disease. Id., at p.26. It is, according to ReliaStar, approved to treat Primary Immune Deficiency. Id. In apparent disregard of the contents of Exhibit A-30 (where Mr. Pongonis' doctors state that "[h]is primary diagnosis is immunodeficiency/immune dysregulation with Still's disease as a secondary diagnosis"), ReliaStar argues that Mr. Pongonis' IVIG treatments were "experimental" and not covered by the Intrawest Plan because "[a]s of December 13, 2002, Pongonis did not have either Common Variable Immune Deficiency or Primary Immune Deficiency. Instead, he had Still's Disease." Id., at p.14.

Similarly, ReliaStar argues that Mr. Pongonis' IVIG treatments were excluded from coverage by the ReliaStar Excess Policy, which provides that "Eligible Excess Risk Expenses shall

5

not include the following, whether or not such expenses are covered under the Employee Benefit Plan: . . . (J) Expenses which are Experimental or Investigational." Id., Exh. A-3 at p.8. The ReliaStar Excess Policy defines Experimental treatment as follows:

> EXPERIMENTAL OR INVESTIGATIONAL means the use of any treatment, procedure, facility, equipment, drug, device or supply not accepted as standard medical treatment of a condition or illness, or any of such items requiring federal or other government agency approval not granted at the time services are provided.

Id., Exh. A-3 at p.1.

According to ReliaStar, IVIG was not an approved treatment for Still's disease; Mr. Pongonis was diagnosed with Still's disease; therefore, the use of IVIG to treat Mr. Pongonis' Still's disease was not an FDA approved use of IVIG and was experimental. *ReliaStar's Brief*, at pp.9-10.[2]

### III.

Rule 56(c), Fed. R. Civ. P., provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson

---

[2]ReliaStar's position is most clearly stated in its *Memorandum of Law In Response to Plaintiff's Motion for Summary Judgment* [Doc. # 45, filed 10/25/2006], where ReliaStar argues:

> In fact, ReliaStar's decision was not even based on a finding that IVIG was experimental for "immunodeficiency". Rather, it found that the evidence showed that Pongonis was actually suffering from Still's disease, a condition for which IVIG is not FDA approved.

Id., at p.12.

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the party opposing summary judgment and to allow that party the benefit of all reasonable inferences to be drawn from the evidence.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).

The moving party bears the initial burden of demonstrating by reference to portions of the pleadings, depositions, answers to interrogatories and admissions on file, and affidavits the absence of genuine issues of material fact.  Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986).  The party opposing summary judgment is then required to go beyond the pleadings and by reference to evidence designate specific facts showing that there is a genuine issue for trial.  Id. at 324.  Only admissible evidence may be considered when ruling on a motion for summary judgment.  World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

IV.

To begin, the cross-motions for summary judgment are supported by voluminous exhibits. Many of the exhibits are documents, but there is no affidavit or other evidence authenticating the documents.  Some of the documents are complex, but there is no affidavit or other evidence explaining them.  For example, ReliaStar relies on Exhibit A-26, which it terms the "FDA Warning Letter," as evidence of the crucial fact that "Still's Disease is not an approved indication for IVIG."  *ReliaStar's Brief*, at pp.12-13.  Exhibit A-26 is 24 pages in length, is technical, and ReliaStar provides no pinpoint citation or quotation in support of this crucial issue.  Still other exhibits appear to be inadmissible hearsay.  E.g., Exhibit A-13 (captioned "Re: Albert Pongonis-- Timeline of Events").  Consequently, I find that the cross-motions fail to meet their

burden to demonstrate by reference to admissible evidence the absence of genuine issues of material fact, as required by Celotex, 447 U.S. at 323.

In addition, one of the central facts material to the resolution of this case--whether Mr. Pongonis' diagnosis was Still's disease for which IVIG may not have been an approved drug, or an immunodeficiency for which IVIG was an approved drug--is strenuously disputed. On this crucial factual issue there is conflicting evidence which may only be resolved following a trial on the merits. Compare *ReliaStar's Brief*, Exh. A-9 (indicating that as of May 8, 2002, Mr. Pongonis was diagnosed "with Still's disease"; that Still's disease "is quite possible"; but that Mr. Pongonis is at National Jewish "for a second opinion" and that "[o]ther etiologies include . . . immunodeficiency such as common variable immunodeficiency. . . .") and Exh. A-10 at p.77 (excerpts from the deposition of Dr. Jill Anderson Poole, on of Mr. Pongonis' doctors, where Dr. Poole testified that she "didn't think [Mr. Pongonis] had a primary immunodeficiency" as of December 13, 2002, but that she believed he had "immune dysregulation and [that] his immune system [was] not behaving appropriately") with Exh. A-30 (a letter from Mr. Pongonis' treating physicians, including Dr. Poole, that Mr. Pongonis' "primary diagnosis is immunodeficiency/ immune dysregulation").

ReliaStar's request for summary judgment on Intrawest's second claim for relief--bad faith breach of the insurance contract--misses the mark for two additional reasons. First, ReliaStar's conclusory argument that "the contract at issue here is not between an insurance company and an insured," *ReliaStar's Brief* at p.27, is not at all apparent to me. To the contrary, on the record before me the ReliaStar Excess Policy appears to be exactly a contract between an insurance company (ReliaStar) and an insured (Intrawest). My conclusion is supported by the cases cited by

ReliaStar.  See Security Mutual Casualty Co. v. Century Casualty Co., 531 F.2d 974, 978 (10th Cir. 1976); Theriot v. Colorado Ass'n of Soil Conservation Districts Medical Benefit Plan, 38 F. Supp. 2d 870, 877 (D. Colo. 1999).

Second, Colorado law recognizes the tort of bad faith breach of an insurance contract. Specifically, in Goodson v. American Standard Ins. Co. of Wisconsin, 89 P.3d 409, 414 (Colo. 2004), the Colorado Supreme Court explained:

> Every contract in Colorado contains an implied duty of good faith and fair dealing.  In most contractual relationships, a breach of this duty will only result in damages for breach of contract and will not give rise to tort liability.
>
> But, insurance contracts are unlike ordinary bilateral contracts. First, the motivation for entering into an insurance contract is different.  Insureds enter into insurance contracts for the financial security obtained by protecting themselves from unforeseen calamities and for peace of mind, rather than to secure commercial advantage.  Second, there is a disparity of bargaining power between the insurer and the insured; because the insured cannot obtain materially different coverage elsewhere, insurance policies are generally not the result of bargaining.
>
> Due to the "special nature of the insurance contract and the relationship which exists between the insurer and the insured," an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort.  The basis of the tort liability is the insurer's conduct in unreasonably refusing to pay a claim and failing to act in good faith, not the insured's ultimate financial liability.

(Internal citations omitted.)

Finally, ReliaStar's half-hearted argument for summary judgment on Intrawest's deceptive trade practices claim, which is less the half-a-page in length, in insufficient to establish that ReliaStar is entitled to judgment as a matter of law.

V.

IT IS ORDERED that Defendant's Motion for Summary Judgment [Doc. # 37] and Plaintiff's Motion for Summary Judgment [Doc. # 40] are DENIED.

DATED March 7, 2007.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge